The opinion of the Court was delivered by

Mr. Justice Colcock,

This was a special action-brought against the defendant for causing plaintiff’s horse to he seized and sold, under an execution issued by him for the costs of a mis trial, which happened ina case under the acts of 1S12 and 1817, for affording to landlords and lessors a summary mode of regaining possession from tenants and lessees.in certain cases.
The last of these acts requires that two magistrates should sit in such cases, and the defendant alone, caused the jury to be impanuclled, and presided on the trial.
The jury could not agree on a verdict, and were discharged; and the defendant, for the costs of such mistrial, issued his execution, and caused the plaintiff’s horse to be sold. The jury found a verdict for the plaintiff, and the defendant applies for anew trial, nonsuit and in arrest of judgment. A number, of grounds are stated, which it is not necessary, from the view which the Court has taken of the case, to consider. The important questions are; first, whether an action can he maintained against a magistrate for such an injury; and, secondly, whether case is the proper action. The counsel for the defendant, both, in the court below and here, has taken the broad ground, that no one clothed with judicial power can he subjected to a civil suit; asid has contended that the magistrate in this case was in the exercise of such powers, and must be considered as only having committed an error of judgment, for which he is not responsible in damages; and has referred to a number of authorities which shall be examined in their order. It must be obvious that such protection is indispensably necessary for the due administration of justice and the support of the law, in all the higher tribunals of justice, in which we have a right to expect a union of talent and integrity;..to whom, therefore, such an indemnity muy be with more propriety extended? smd who are made *66 sponsible at tlie bar of the people. But it would be lamentable, indeed, if the inferior tribunals of justice were to be thus shielded. As much protection is, however, given to them as can be 'afforded with a due regard to the rights of the citizen. Where 'they keep within their jurisdiction and act from pure motives, they cannot be made amenable to a suit for damages. It is ■scarcely possible to open a book on this subject, which will not Shew the magistrates may be made to respond in damages wlicre-ihey exceed their jurisdiction; when their acts are so palpably unjust as to be the result of sheer ignorance, a total disregard to the rights of their fellow citizens, or corrupt motives, (a) In looking into the subject, we are struck with the various statutes. *67 wf Great Britain made tor their protection. Such as limitations to the suits; provisions that they must be previously' iro-’ ti/ied of the intention of the party intending to sue, and declaring that without such notice the party shall be non-suited; that the suit may he brought in the proper count}'; that they may tender amends, 8sc. See 2 Selwyn, 933 to 928. The eases referred to by' defendant’s counsel were, 1st. the case of Bentham, 2 Bay. p. 1. That tras a case of commitment by the magistrate for a contempt; and it was clear he had such ■power, •and exercised it properly. The next was the case of Yates vs. Lansing, 5 Johns. Rep. 282, which can have no application, as is was the case of a judge of one of the superior courts, the Chancellor of New York. But I shall hereafter refer to it, ás supporting the general positions as to magistrates. The third was the case of Williams vs. Spencer; where it was decided ■ that a constable who broke into an inner room to arrest the plaintiff, was not answerable, having authority to do so; 5 Johns. Rep. 352: and the fourth, Justice Burdine’s case; 2 Nott & M'Cord, 168; in which the general position which I have laic] down is expressly recognized. Mr. Justice Richardson, in delivering the opinion says, they, the justices are not liable, “unless wil-fully wrong pr negligent, or at least convicted of such ignorance as shews a depravity in undertaking to give an opinion;” *68 and in that case, the question determined was one of technical nicety, and on which the judges of the superior court diilcred.. In the case of Yates and Lansing, before referred to for another purpose, Chief Justice Kent, in stating the law on this subject, points to the distinction between inferior and superior tribunals. «Where courts of special and limited jurisdiction exceed their powers, the ■whole proceeding is coram non judice, and all concerned in such void proceedings are held liable in trespass;” and he referred to the case of the Marshelsea, 10 Co. 68: and Terry vs. Huntingdon; Hardres, 480. In subsequent part of the opinion, he repeats the same doctrine; «inferior courts are only protected while acting within their jurisdiction:” and the reason is obvious: to such the extent of jurisdiction is marked out and defined.
But I will not multiply arguments on a point so long and well Settled by adjudged cases. By the statute of 18 Eliz. c. 3. s. 2. Two magistrates are required to sit on the case of a woman’s refusing to filiate her bastard child. In the case of Weller vs. Toke, 9 East 364, the defendant acted alone and committed the mother, and was sued in an action of trespass and false imprisonment; and a nonsuit was ordered on the ground above, of a want of notice of such intention to sue, as required by the 24 Geo. 2,-c. 44; whereby he was prevented from tendering amends.
In the case before us, however, there can be no doubt; for the jury have determined that the defendant acted maliciously. They were instructed not to find vindictive damages beyond the real amount of what the defendant had sustained, unless they concluded from the testimony that the defendant had been influenced by malicious motives, or acted corruptly, and they have found damages far beyond the the amount of the injury sustained.
But on the ground in arrest of judgment, the defendant must succeed. Mr. Chitty puts this, subject in a clear point of view: in treating of actions and laying down rules by which it shall be determined whether the action of trespass or case shall be brought, the first and most obvious one is, that where the injury is direct and immediate, the action must be trespass. It is in some cases, (such as the collision of ships,) difficult to decide when the act is to be considered as direct and immediate; hut in a case like the pres'ent there is no difficulty; for the act .is *69 us direct as the case of the log being thrown against a person, •ns contra-disthiguishedfrom its being placed in the road-and one falling over it. Trespass must be laid vi f armis £/• contra pa-cora: But the force may be constructive. All illegal acts are in the eye of the law forcible and against the peace. Another. important consideration is the subject on which the injury operates; whether the property, the person, or the reputation. Ib page 1C5, treating of the action of trespass, he says, in its application to personal property, it is to be considered with reference, first, to the nature of the thing affected; second, plaintiff’s right thereto; third, the nature of the injury. As to the first trespass lies 'for talcing or injuring all domiciled and tame animals, Secondly, the property must be in plaintiff’s possession, cither actual or constructive. Thirdly, as to the nature of the injury, it may be either by an unlawful talcing of the property, or by in-. juring it while in the possession of the owner or bailee. Thus it appears that where the act complained of is unlawful, imme-. diate, and operates on the personal property, trespass is the proper action. If further authority could be necessary, it will be found in an examination of the cases themselves, by which it will appear that trespass is the action used: and of the statute of 43 Geo. 3 c. 141, by which it is enacted, that in certain cases therein enumerated, case only shall be brought. 2 Selwyn, 923.
Johnson, JSroit, Richardson, Justices, concurred.

 I have not found anj* ease in which it lies bean decided, that a eivil suit ¡May be maintained against even an inferior judicial officer, for an injury done by an erroneous judgment, on a matter within his jurisdiction; even if the error viere wilful, or the effect of corruption: though a contrary inference might Be drawn from some expressions used in the opinions delivered in the cases of Reid vs. Hood & Burdine, & Young vs. Herbert. 2. Nott & M'Cord, 168.
There is no doubt, however, that a justice of peace may bo punished by indict,vent, for corruption in office ; even though the judgment corruptly procured should be correct, which would of course furnish no ground for a civil suit. So I presume, he might be punished for a violation of law, so palpable and gross as to leave room for no other inference but that it ivas wilful; or perhaps where it was the effect of such extreme ignorance as to render it criminal for him Id have undertaken the exercise of the office. Under precisely the same cir.cum-Stances, I'should suppose, the judges of the superior courts might be punished'by fmpcachmctnt; and so far superior and inferior judicial officers appear to stand on the same footing.
It strikes one at first view, that any judicial officer must be responsible to' prosecution os private suit, for an injury done in a matter without his jurisdiction; Because as to such matter, he is no judicial officer at all. It is the mere private wrong of a private person. Yet numerous decisions have settled that judges of superior courts are exempted from responsibility to suits or prosecutions, for any act done in the exorcise of their official functions. And for this-there are obvious reasons, independent-of the presumption, that trusts so important will be committed to men of talent and integrity: which might, in one point-of view, seem a reason for subjecting them to greater responsibility, if they are found deficient in those qualifications. Their jurisdiction,- though not strictly unlimited, is yet not defined, as inferior jurisdictions are; and they themselves must necessarily be the judges of its extent. To make them liable, therefore, for exceeding their jurisdiction, would-be to render them responsible for error of judgment.
The decision of one of these judges, that the matter pertained to his jurisdiction, would be of as much authority as that of any tribunal before which a suit or indictment could bo brought, determining the contrary. An appellate qourt may reverse their judgments, bqtnotcontrolthcm in the exercise of their *67 jurisdiction; as they may control all inferior judicial officers. From the nature of their offices, therefore, they must of course be exempted from this sort of responsibility.
Yet even a judge of a superior court may, perhaps, be liable to a suit or prosecution, in some cases that might be imagined; where he had committed a crime or private wrong, and by a mere evasion endeavored to screen himself under the pretext of exercising his official functions. “If the court of Common Fleas,” says Hawkins, B. 6. C. 28. S 6. “give judgment on an appeal of death, orjus-ticesofthe peace on an indictment of high treason, and award execution, both the judge who sentences, and the officer who executes, may be guilty of felony; because these courts having no more jurisdiction over these crimes than mere private persons, their proceedings thereon are merely void and without any foundation.” “Even the juds^e who condemns a man cannot execute his own sentence.” Hale’s F. C. 433: and if he did he would be guilty of murder. So I suppose, if he should commit au assault and battery under the pretence of executing a sentence of his own, he would be liable for the trespass. See 3 Bac. Ab. 674. Tit. Murder and Homicide, E; Case of the Marshailsea. 10 Co. Rep. 76. See also the cases cited in the note to Young & Herbert, 2 Mott M'Cord, 174. Hammond vs. Howell, 1 Mod. 184, 2 Mod. 218. Floyd vs. Barker, 12 Co. 23. Aire vs. Sedgwick, 2 Roll. Rep. 109.